IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 09-81230 |
| THE STEEL NETWORK, INC., ) | |
| ) | Chapter 11 |
| Debtor. ) | [Administratively Consolidated] |
| ) | |
| IN RE: ) | |
| ) | Case No. 09-81231 |
| APPLIED SCIENCE INTERNATIONAL, ) | |
| LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| THE STEEL NETWORK, INC., ) | |
| ) | |
| Plaintiff and Counterclaim ) | Adversary Proceeding No. 10-09019 |
| Defendant ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL L. TORRES, ) | |
| ) | |
| Defendant, Counterclaim ) | |
| Plaintiff and Third-Party ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| EDWARD DI GIROLAMO ) | |
| ) | |
| Third-Party Defendant ) | |

## RESPONSE TO DEFENDANT'S MOTION TO AMEND HIS ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT

COMES NOW Plaintiff and Counterclaim Defendant The Steel Network, Inc. ("TSN") through counsel, pursuant to Local Rule 7007-1 and hereby submits this Response in Opposition to the Motion to Amend the Answer, Counterclaim, and Third-Party Complaint (the "Motion to

Amend") filed by Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Michael L. Torres ("Torres").

## MATTER BEFORE THE COURT
## AND FACTUAL BACKGROUND

This Matter is before the Court on Torres' Motion to Amend. Torres filed his Motion to Amend in response to TSN's Motion to Dismiss or to Abstain, Docket Number 18 in the above captioned proceeding. The factual background is discussed at length in TSN's Brief in Support of its Motion to Dismiss. Docket No. 28. In summary, however, the purpose of this Adversary Proceeding is to determine whether a Stock Redemption Agreement, a Promissory Note and a Security Agreement (collectively, the "Agreements") should be set aside as fraudulent conveyances or unlawful distributions, or if not, whether they should be subordinated. In response to TSN's Complaint seeking this declaratory relief, Torres filed counterclaims against TSN for breach of contract, conversion and unjust enrichment based on TSN's alleged breach of the Agreements (the "Original Counterclaims"), as well as claims against Edward di Girolamo for breach of fiduciary duty, constructive fraud, fraud and negligent misrepresentation (the "Third Party Claims").

Because the Third Party Claims involve a dispute between di Girolamo and Torres which is irrelevant to this proceeding, TSN and di Girolamo filed separate Motions to Dismiss the Third Party Claims for lack of subject matter jurisdiction and improper impleader. Torres has not attempted to argue that his original Third Party Claims should survive TSN's Motion to Dismiss. Instead, Torres filed the subject Motion to Amend seeking to add entirely new counterclaims against TSN for fraud, negligent misrepresentation and punitive damages (the "Proposed Amended Counterclaims").

Torres' Proposed Amended Counterclaims are futile, however, in that they do not allege causes of action upon which Torres could obtain relief against TSN. Further, even if Torres were allowed to assert the Proposed Amended Counterclaims, di Girolamo still could not properly be impleaded into this Adversary Proceeding. As such, Torres' Motion to Amend should be denied and TSN's Motion to Dismiss should be granted.

## ARGUMENT

Leave to amend a pleading should not be granted when amendment would be futile or where amendment would be prejudicial to the opposing party. *Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010). The Proposed Amended Counterclaims fail to state a claim upon which relief can be granted and are, therefore, futile. Moreover, allowing the amendment would unfairly prejudice TSN's efforts to proceed expeditiously through its Chapter 11 Bankruptcy. Further, the Proposed Amended Counterclaims would still have impleader defects, warranting dismissal of the Third Party Claims. Therefore, Torres' Motion to Amend should be denied.

### I. THE PROPOSED AMENDMENTS ARE FUTILE.

This Court "may refuse to allow leave to amend [the] pleadings when the proposed changes would be futile." *New Beckley Mining Corp. v. International Union, United Mine Workers*, 18 F.3d 1161, 1164 (4th Cir. 1994). A proposed amendment is futile when it cannot withstand a motion to dismiss or would otherwise be "an empty or useless gesture." *Shanks v. Forsyth County Park Auth.,* 869 F. Supp. 1231, 1238 (M.D.N.C. 1994). Thus, denial of a motion to amend is appropriate where, as here, it would fail to survive a motion to dismiss. *C.f. HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1011-12 (4th Cir. 1996)

3

(affirming denial of motion to amend "because allowing the amendment would have been futile and would have, at most, delayed . . . inevitable dismissal"), *cert. denied*, 520 U.S. 1264 (1997).

### A. The Proposed Amended Counterclaims Against TSN are Barred Because Torres Did Not Assert Them in His Proof of Claim.

Pursuant to Rule 3002 of the Federal Rules of Bankruptcy Procedure, a creditor's claim or interest in the debtor's estate will not be allowed unless the creditor timely files a proof of claim before the claims bar date set by the court. The claims bar date is not merely "a procedural gauntlet," it is "an integral part of the reorganization process." *In re Enron Corp.,* 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003), *aff'd*, 419 F.3d 115 (2nd Cir. 2005). There must be a point after which the trustee or the debtor in possession, in this case TSN, must be able to rely on the claims filed by the creditors to calculate the value of the bankruptcy estate. The claims bar date demarcates this point. After the claims bar date, TSN should be allowed to accurately assess its estate.

Torres failed to assert any of the Proposed Amended Counterclaims in his proof of claim filed on July 29, 2009. Instead, in his proof of claim, Torres listed the nature of his claim as "Promissory Note" and attached a copy of his complaint he previously filed in state court alleging the same claims as the Original Counterclaims and a copy of the Promissory Note to the proof of claim form. Nowhere in his proof of claim did Torres mention fraud, negligent misrepresentation or punitive damages against TSN. *See* Proof of Claim, Bankruptcy Claim No. 2-1. The claims bar date set by the Court in TSN's Bankruptcy Case was November 24, 2009, nearly seven months before Torres first attempted to assert the Proposed Amended Counterclaims. *See* Notice of Chapter 11 Bankruptcy Case, Bankruptcy Docket No. 6.

Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure specifically requires a creditor to file a proof of claim if the claim or interest is disputed, contingent, or unliquidated.

Torres did not include any allegations of fraud, negligent misrepresentation, or punitive damages in his proof of claim. All of those claims are disputed and unliquidated, and thus should have been included in Torres' proof of claim if he intended to preserve them. *See In re A.H. Robins Co., Inc.*, 862 F.2d 1092, 1095 (4th Cir. 1988) (noting that a proof of claim for tort damages must state the ground for liability to satisfy the requirement that a proof of claim must include a "written statement setting forth a creditor's claim").

Torres' failure to include his Proposed Amended Counterclaims in his proof of claim precludes him from now asserting those claims in this Adversary Proceeding. A creditor is barred from pursuing causes of action in an adversary proceeding unless the recovery sought was included in its proof of claim. *See*, *e.g.*, *In re Black & Geddes, Inc.*, 58 B.R. 547 (Bankr. S.D.N.Y. 1983); *see also NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991) (concluding plaintiff's failure to include a claim for punitive damages in its proof of claim warranted dismissal of the plaintiff's claim for punitive damages in the adversary proceeding).

In *Black & Geddes*, creditors brought an adversary proceeding against the trustee seeking the imposition of a constructive trust over various assets in the debtor's estate. *Id.* at 548. The creditors, however, had only asserted a simple unsecured contract debt when they filed their proof of claim. *Id.* at 549. The Bankruptcy Court for the Southern District of New York granted summary judgment on the trustee's behalf because the relief sought was inconsistent with the creditors' proof of claim. *Id.* at 550.

Torres failed to timely assert the Proposed Amended Counterclaims in his proof of claim, and the claims bar date has long since passed. As such, the Proposed Amended Counterclaims against TSN are barred and Torres' Motion to Amend should be denied.

B.  Torres' Proposed Amended Counterclaims Are Substantively Deficient.

In addition to being asserted too late, Torres' Proposed Amended Counterclaims fail as a substantive matter and would not survive a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A cause of action is not facially plausible unless it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint must do more than "tender 'naked assertion[s]' devoid of 'further factual enhancement'" in order to state a claim. *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). The Proposed Amended Counterclaims against TSN fall far short of this standard.

    i.    Torres' proposed fraud claim fails as a matter of law.

To state a cause of action for fraud under North Carolina law, the plaintiff must allege facts allowing the court to draw the reasonable inference that the defendant made (1) a "[f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974); *RD & J Properties v. Lauralea-Dilton Enterprises, LLC*, 600 S.E.2d 492, 498 (N.C. App. 2004). Further, pursuant to Rule 7009 of the Federal Rules of Bankruptcy Procedure, fraud must be plead with particularity. The Fourth Circuit, applying North Carolina law, has held that "'[m]ere generalities and conclusory allegations of fraud will not suffice' to sustain a fraud claim." *Strum v. Exxon Co., USA,* 15 F.3d 327, 331 (1994) (quoting *Moore v. Wachovia Bank & Trust Co.*, 30

N.C. App. 390, 226 S.E.2d 833, 835 (1976)). Torres' proposed fraud counterclaim fails to properly set forth allegations to support the substantive elements of fraud under the heightened pleading standard imposed by Rule 7009.

The only allegedly false statements Torres attributes to TSN to support his fraud counterclaim relate to TSN's intent to perform the Agreements. Torres alleges that TSN, through di Girolamo, told Torres it would purchase his shares when it lacked ability to make the payments and did not intend to make the payments. Proposed Amended Counterclaim ¶ 65. Essentially, Torres alleges that because TSN failed to make payments pursuant to the Agreements, its statements that it would purchase TSN's shares had to have been false when made. Torres does not allege, and cannot allege, any facts to support his claim that those statements were false when made. "The mere failure to carry out a promise in contract, however, does not support a tort action for fraud." *Strum,* 15 F.3d at 331 (citing *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (1961) and *In re Baby Boy Shamp,* 82 N.C. App. 606, 347 S.E.2d 848, 853 (1986)). Therefore, TSN's subsequent non-payment alone is not sufficient to support a fraud claim. *See Strum,* 15 F.3d at 331 (holding plaintiff's naked allegations that defendant never intended to honor its contractual allegations insufficient to support a claim for fraud); *Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, --- F.3d ----, 2010 WL 2106628 (5th Cir. 2010) (holding that subsequent non-performance does not support a cause of action for fraud).

The *Shandong* case is factually similar to this proceeding. In that case, the plaintiff entered into various contracts to sell goods to the defendant's company over a period of time. *Id*. at *1. The defendant's company failed to make payments on two of the contracts and declared bankruptcy. *Id*. To recover its losses, the plaintiff sued the defendant personally alleging the

defendant committed fraud when he entered into the contracts. *Id*. The plaintiff based its fraud claim on the following statements made personally by the defendant to the plaintiff: [1] that the defendant's company "was in sound financial condition[;] [2] that [the defendant's company] would pay for current and future shipments[; . . . and [3] that the defendant] represented repeatedly that [the defendant's company] would make regular payments on its purchases." *Id*. The plaintiff, however, alleged no facts indicating that these statements were false when made other than the defendant's company's failure to perform the contracts. *Id*. at *3.

The Fifth Circuit held that these allegations could not support a fraud claim. "[F]ailure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Id*. at *3; *accord Ferguson v. Ferguson*, 285 S.E.2d 288, 291 (N.C.App. 1982); *Brusilovsky v. Figgie Intern.*, No. 94 C 1506, 1995 WL 330809 at *6 (N.D.Ill. 1995) (collecting cases); RESTATEMENT (SECOND) OF TORTS § 530, Comment (d) ("The intention of the promissory not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.")

Similarly, in this proceeding, Torres fails to assert any allegations indicating that TSN did not intend to honor the Agreements apart from TSN's failure to perform. To the contrary, Torres' Proposed Answer and Counterclaim contains allegations showing that TSN in fact DID intend to honor the Agreements. Torres admits that TSN communicated the Bank's demands regarding subordination and potential default. Proposed Amended Counterclaim ¶ 20-21. Furthermore, the pleadings show that TSN attempted to reach a workable agreement with Torres whereby he would subordinate his debt in a form acceptable to the Bank. Torres admits that the parties tried

8
Case 10-09019    Doc 34    Filed 07/02/10    Page 8 of 16

to negotiate an agreement on March 22, 2009, nearly six months after the execution of the Agreements and the alleged fraudulent statements. Proposed Amended Counterclaim ¶ 24. These facts hardly evidence intent to use "TSN's inability to pay to its own advantage in a bankruptcy proceeding." Proposed Amended Counterclaim ¶ 66.

In addition to the lack of any substantive allegation regarding a false statement, Torres' proposed fraud counterclaim lacks any plausible allegation of deception. Torres merely alleges that "TSN and Mr. di Girolamo deliberately withheld financials from Mr. Torres, making it impossible for him to independently determine whether TSN was insolvent." Proposed Amended Counterclaim ¶ 67. Although Torres asserts that these representations deceived Mr. Torres, it is difficult to conceive how Torres could have been deceived by the withholding of financials. He does not allege he was told false information regarding the content of the financials or the financial status of TSN. He does not even allege he asked to receive the financials. Rather, he merely alleges he did not receive them.

Surely Torres knew he had not received the financials when he executed the Agreements. Torres chose to proceed despite not having those financials. He cannot now say he was deceived or otherwise reasonably relied to his detriment upon TSN's failure to provide financials, or that TSN intended to deceive him by failing to provide him financials he does not even allege he requested.

Just as in *Shandong*, Torres' allegations fail to raise an inference that TSN's representations were false when made, reasonably calculated to deceive or made with the intent to deceive. Therefore, Torres' Proposed Amended Counterclaims against TSN for fraud fail to state a claim upon which relief may be granted and Torres' Motion to Amend should be denied.

### ii. Torres' proposed negligent misrepresentation counterclaim fails as a matter of law.

Torres' proposed counterclaim for negligent misrepresentation against TSN likewise fails to state a claim upon which relief can be granted. In North Carolina, in order to state a claim for negligent misrepresentation, a plaintiff must allege that he "justifiably relie[d] to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 321-322 (N.C.App. 2006).

Torres' proposed counterclaim for negligent misrepresentation consists exclusively of conclusory allegations that TSN supplied false information to Torres, Proposed Amended Counterclaim ¶ 72, that TSN's representations were made negligently, Proposed Amended Counterclaim ¶ 73, that Torres justifiably relied on TSN's representations, Proposed Amended Counterclaim ¶ 74, and that Torres has been damaged by TSN's alleged negligent misrepresentations. Proposed Amended Counterclaim ¶ 75. As discussed above, there is no merit to the allegation that TSN made any false statement. Similarly, Torres has not alleged how he justifiably relied upon those statements or how he has suffered any damage based on that reliance. Further, Torres has failed to make any allegation, conclusory or otherwise, that TSN owed any duty to him.

In *Bob Timberlake*, although the plaintiff alleged that the defendant's representations were made negligently, … that [the plaintiff] relied upon [the defendant's] negligent misrepresentations, that such reliance was reasonable, and that [the plaintiff] has been damaged by [defendant's] negligent misrepresentations," the North Carolina Court of Appeals held that the plaintiff's negligent misrepresentation claims was properly dismissed where the plaintiff "failed to allege that [the defendant] owed any duty to [the plaintiff] or breach[ed] . . . any duty

owed to [the plaintiff]." *Id*. at 322. Just as the plaintiff in *Bob Timberlake*, Torres has failed to allege that TSN owed any duty to Torres or breached any duty owed to Torres.

Therefore, Torres' Proposed Amended Counterclaims against TSN purporting to state a cause of action for negligent misrepresentation to state a cause of action upon which relief can be granted. Because Torres' amended allegations of negligent misrepresentation are facially deficient, these proposed amendments are futile and the Motion to Amend should be denied.

        iii.    Torres' proposed counterclaim for punitive damages fails as a matter of law.

There is no independent cause of action for punitive damages under North Carolina law. *Iadanza v. Harper,* 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2005). While punitive damages are available as a remedy for certain causes of action, the plaintiff is not relieved of the burden of establishing liability under such a cause of action in order to be entitled to recover punitive damages. *Id.* Further, punitive damages are not available as a remedy for breach of contract, but rather must be attached to a cause of action sounding in tort. *Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 330 (4th Cir. 1994).

Torres ties his claim for punitive damages to his cause of action for fraud against TSN. *See* Proposed Amended Counterclaim ¶ 78. Because Torres' proposed cause of action for fraud fails as a matter of law, his proposed counterclaim for punitive damages also must fail. *See Iadanza,* 169 N.C. App. at 783, 611 S.E.2d at 223 (holding defendant's purported claim for punitive damages should have been dismissed by lower court upon dismissal of defendant's counterclaims).

Granting leave to amend to allow Torres' Proposed Amended Counterclaims against TSN for fraud, negligent misrepresentation, and punitive damages would be futile. Therefore, Torres' Motion to Amend should be denied.

## II. TSN WILL BE UNFAIRLY PREJUDICED IF TORRES' MOTION TO AMEND IS GRANTED.

Torres' Motion to Amend is not only futile, but granting the motion also would unfairly prejudice TSN. This is the first time throughout the long history of the litigation between the parties that Torres has attempted to assert any of the Proposed Amended Counterclaims. The litigation began on February 25, 2009 when Torres sued TSN, di Girolamo, and Bank of America, N.A. (the "Bank") in a state court action captioned *Torres v. The Steel Network, Inc., et. al.*, State of North Carolina, County of Wake, Superior Court Division, 09 CVS 3654 (the "State Court Action"). Torres did not bring any claims at that time based on allegations of fraud, negligent misrepresentation, or punitive damages against TSN in the State Court Action.

Similarly, Torres did not assert causes of action for fraud, negligent misrepresentation, or punitive damages against TSN when he filed his proof of claim, or when he filed his Original Counterclaims in this Adversary Proceeding. The only relevant event that Torres' Motion to Amend precedes is the hearing by this Court on TSN's Motion to Dismiss Torres' Third-Party Claims.

Torres should not be permitted to bring new allegations and new claims at this late stage in TSN's Chapter 11 Bankruptcy. TSN has been proceeding through bankruptcy for over ten months under the assumption that Torres' claims were primarily anchored in breach of contract.

TSN has already submitted a Joint Plan of Reorganization dated April 20, 2010 (the "Joint Plan"). The Joint Plan contains many contingencies regarding the status and priority of Torres and his interests. TSN developed its proposed treatment of Torres under the assumption that Torres' claims were consistent with the relief he sought in the State Court Action and his proof of claim—i.e. breach of contract. The Joint Plan does not, however, contemplate Torres' Proposed Amended Counterclaims for fraud, negligent misrepresentation or punitive damages.

To allow Torres to assert new claims now will unduly prejudice TSN by possibly forcing it to alter Torres' treatment under the Joint Plan. At a minimum, TSN would be required to modify its Disclosure Statement to list the possibility it will face a claim from Torres for fraud and punitive damages in an undetermined amount. The specter of unliquidated punitive damages could unduly damage TSN's efforts to secure support for the Joint Plan, and thus damage TSN's opportunity for a successful reorganization.

The circumstances make clear that Torres' primary purpose in asserting his Proposed Amended Counterclaims now is to attempt to manufacture jurisdiction for his Third Party Claims. Torres should not be allowed to cavalierly wreak such havoc on TSN's reorganization efforts this late in the process and nearly seven months after the claims bar date just so he can assert his unrelated claims against di Girolamo in this Adversary Proceeding; claims which he could easily prosecute in the State Court Action. This Court should not countenance Torres' attempt to sidestep TSN's Motion to Dismiss, and Torres' request for leave to file the Proposed Amended Counterclaims should be denied.

### III. IMPLEADER OF DI GIROLAMO IS STILL NOT PROPER UNDER RULE 7014.

As discussed at length in TSN's Brief in Support of its Motion to Dismiss, the Third-Party Claims do not provide a proper basis for impleader. Even if they were to be permitted, the Proposed Amended Counterclaims do not remedy these defects.

Impleader is not proper unless the purported third-party defendant faces some form of derivative liability for the wrongs alleged in the complaint. *GE Healthcare Financial Services v. EBW Laser, Inc.*, 225 F.R.D. 176, 180 (M.D.N.C. 2004). The Proposed Amended Counterclaims still fail to allege that di Girolamo should be obligated to pay TSN any amount arising out of TSN's claims in the Complaint. Indeed, Torres cannot remedy this defect; TSN's Complaint

only seeks declaratory, not monetary, relief. *See* TSN's Brief in Support of its Motion to Dismiss. As such, under no circumstances can di Girolamo be liable to Torres for all or part of TSN's causes of action.

In Torres' Memorandum of Law in Opposition to TSN's Motion to Dismiss, Torres attempts to justify impleader through a transactional test. Torres explicitly states that the "allegations concern the circumstances of the stock purchase agreement" and that "[t]hese claims all arise from the same set of facts." As explained in *GE Healthcare*, however, the fact that two claims involve the same transactions or facts is not sufficient to justify impleader. "A transactional test is not appropriate to determine whether impleader is proper. This means that a separate and independent claim or claims . . . cannot be brought under Rule 14 of the Federal Rules of Civil Procedure, even if it involves the same transaction or facts." *GE Healthcare*, 225 F.R.D. at 180.

Likewise, the possibility of offsetting claims against one party with recovery from another does not justify joinder of those claims through impleader. The liability of two separate parties to a claimant does not necessarily mean the claims are derivative of, or even related to, one another. Thus, Torres' argument that collection from di Girolamo may affect his claim against TSN does not make these otherwise independent claims any more derivative of one another to justify impleader.

## CONCLUSION

The Proposed Amended Counterclaims are barred because Torres failed to raise them in his proof of claim and otherwise fail from a substantive perspective. As such, the Proposed Amended Counterclaims are futile.

Further, for nearly a year and a half Torres gave no indication he had claims beyond a simple claim for breach of contract. TSN has now reasonably relied on Torres' position, and would suffer undue prejudice if he is allowed to alter the nature of his claims at this late date. Torres' Motion to Amend, therefore, should be denied as futile and unfairly prejudicial to TSN.

This the 2nd day of July, 2010.

/s/ H. Arthur Bolick II
John H. Small
N. C. State Bar No. 8982
jsmall@brookspierce.com
H. Arthur Bolick II
N. C. State Bar No. 20866
abolick@brookspierce.com
Clint S. Morse
N.C. State Bar No. 38384
cmorse@brookspierce.com
*Attorneys for The Steel Network, Inc.*

OF COUNSEL:

**BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.**
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Greensboro, NC 27420-6000
Telephone: 336/271-3170

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was served upon the following persons by depositing a copy thereof in the United States Mail, postage prepaid, and addressed as follows or by electronic means:

>James C. White
>Law Office of James C. White, P.C.
>P.O. Box 16103
>Chapel Hill, NC 27516
>*Counsel for Mr. Torres*
>
>Michael D. West
>Bankruptcy Administrator
>P.O. Box 1828
>Greensboro, North Carolina 27402
>
>Richard M. Hutson, II
>300 West Morgan Street
>Suite 1500, PO Drawer 2252-A
>Durham, NC 27702
>*Counsel for Mr. di Girolamo*

This the 2nd day of July, 2010.

                                        /s/ H. Arthur Bolick II
                                        H. Arthur Bolick II